UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTONIO COOLEY,

               Petitioner,

    -vs-

SUPERINTENDENT,
AUBURN CORRECTIONAL FACILITY[1]


               Respondent.

_____

**DECISION AND ORDER**
**No. 09-CV-06384T**

## I.   Introduction

*Pro se* Petitioner Antonio Cooley ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered February 16, 2005, in New York State, Supreme Court, Monroe County (John J. Brunetti, A.J.), convicting him, after a jury trial, of Attempted Murder in the Second Degree (N.Y.

---

[1]

    As Respondent correctly points out in its Answer (Dkt. No. 5 at 1-2), Petitioner has failed to identify a proper Respondent to his § 2254 habeas corpus petition. Petitioner has named as his Respondent the State of New York. The correct Respondent for a § 2254 habeas proceeding is the name of the authorized individual having custody of the Petitioner. 28 U.S.C. § 2243. Given that Petitioner is currently incarcerated in the Auburn Correctional Facility, the correct Respondent therefore would be the Superintendent of the Auburn Correctional Facility. In light of Petitioner's *pro se* status and the fact that this in no way will prejudice Respondent, and in the interests of Court efficiency, the Court will deem the petition amended to change the name of Respondent to the Superintendent of the Auburn Correctional Facility. The Clerk of the Court is directed to terminate the State of New York as Respondent, add Superintendent of the Auburn Correctional Facility as the new Respondent, and revise the caption of this action accordingly.

Penal Law ("Penal Law") §§ 110.00, 125.25 [1]) and two counts of
Assault in the First Degree (Penal Law § 120.10 [1]).

For the reasons stated below, habeas relief is denied and the
petition is dismissed.

## II.  Factual Background and Procedural History

The charges arise from an incident that occurred on July 1,
2004 in the City of Rochester, New York, wherein Petitioner
attacked Doris Collins ("Collins") and her daughter, M.M., with a
knife in their apartment located at 231 Genesee Street.

On that date, thirteen-year-old M.M. was home with her mother
and two younger cousins.  At approximately 4:30 p.m., M.M. heard a
knock on the door and her mother asked who was there.  In response,
Petitioner, whom M.M. had known all her life, answered "Ton" and
her mother told him to enter.  Petitioner walked inside the
apartment and went into Collins' bedroom while calling for Collins
to follow him.  T.T. 247-249, 292, 408, 429-430.

When Collins stepped inside her bedroom, Petitioner grabbed
her shoulder.  When Collins asked Petitioner what he was doing,
Petitioner told her to "shut up" and made a motion with his right
hand, pulling it across her neck from left to right.  Collins
testified that Petitioner then cut her, although she could not
remember what happened after the incident.  She regained
consciousness later at the hospital.  T.T. 409-411, 415-416, 434.

Petitioner then came out of the room and told M.M. to put down

-2-

her niece, whom M.M. had picked up when Petitioner came into the apartment.  When M.M. refused, Petitioner "shot [the niece] down on the ground" and shoved M.M. into her bedroom, closing the door. Petitioner then forced M.M. to the bed and began stabbing her in the neck and back as he tried to remove her skirt.  As he did so, Petitioner did not say anything.  However, several months prior, he had told M.M. that he was "going to come back [to the apartment] and [she] better be ready to have sex with him."  As Petitioner tried to remove her skirt, M.M. tried to move towards her dresser to get a pen to defend herself.  She tried to stab Petitioner with the pen, but was unable to do so.  Petitioner choked M.M. as she swung the pen at him.  A struggle ensued and M.M. fell to the floor.  Petitioner then left the apartment, and M.M. wrapped a towel around her neck and ran outside to a nearby hair salon where she collapsed.  T.T. 250, 252-253, 264, 270, 273, 298.

Officer Jaqueline Pulsifer of the Rochester Police Department ("RPD") was directed to the hair salon for a reported stabbing. When she arrived at the scene, she saw M.M. on the floor of the salon being attended to by emergency personnel.  Officer Pulsifer left to try and locate other witnesses when she saw Collins walking from an alley towards her as she stood on Genesee Street.  Officer Pulsifer saw that Collins, who was unable to speak to her, had several "bleeding" lacerations to her neck and throat.  T.T. 348-353.

M.M. was taken to Strong Memorial hospital where she was treated. As a result of her wounds, she had pain for approximately four days, and scars on her neck and back. Collins was also taken to the hospital where she remained for fourteen days. She underwent surgery for her wounds and a had a tracheotomy tube to assist her breathing placed in her throat. She suffered from scarring on her neck as a result of her injuries. T.T. 254-256, 410-414.

Petitioner was later arrested by officers of the RPD, and interviewed by Investigator Francis Camp. Initially, Petitioner denied his involvement in the crimes, telling Investigator Camp that he was "at Chester's on Chili Avenue . . . getting high on that day." Subsequently, he recanted and admitted his involvement in the crimes. He provided a written statement to Investigator Camp, wherein he maintained that he had gone to Collins' apartment to collect $50 she owed him and that Collins got angry and ordered him out of her apartment while charging at him with a knife. Petitioner maintained that he knocked the knife out of Collins' hand, picked it up in self-defense, and that both Collins and McCloud were cut in the ensuing struggle. T.T. 375-379, 381-384, 387-388.

By Indictment No. 000761, Petitioner was charged with Attempted Murder in the Second Degree (Collins), Assault in the First Degree (Collins), Assault in the First Degree (M.M.), and

Attempted Rape in the First Degree (M.M.).  See Resp't App. A at 5-6, 12.

A jury trial was conducted before Judge Brunetti on January 6, 2005, at the close of which Petitioner was found guilty of Attempted Murder in the Second Degree and two counts of Assault in the First Degree.  He was acquitted of Rape in the First Degree. T.T. 598-599.

Petitioner was sentenced as a second violent felony offender to twenty years in prison for each crime, with one of the assault sentences to run consecutively, for a total of forty years imprisonment.  Sentencing Mins. [S.M.] 11-12.

On April 25, 2008, the Appellate Division, Fourth Department unanimously affirmed the judgment of conviction, and leave to appeal was denied.  People v. Cooley, 50 A.D.3d 1548 (4th Dep't 2008); lv. denied, 10 N.Y.3d 957 (2009).

No collateral motions were filed.

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) legally insufficient evidence; (2) prosecutorial misconduct; and (3) the trial court's admission of Molineux evidence deprived him of his right to a fair trial and due process of law.  See Pet. ¶ 22, Attach. (Dkt. No. 1); Traverse [Tv.] 6-10 (pages unnumbered in original) (Dkt. No. 10).

**III. General Principles Applicable to Habeas Review**

    **A.    The AEDPA Standard of Review**

    Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not _dicta_) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the

state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.   Exhaustion and Procedural Default**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).  However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263, n.9, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989) (other citations omitted).  Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Id.  When a petitioner no longer has "remedies available" in the state courts, because he is procedurally barred by state law from raising such claims, the

-8-

habeas court may deem the claims exhausted but procedurally defaulted. <u>Id.</u> at 120-21 (quoting <u>Pesina v. Johnson</u>, 913 F.2d 53, 54 (2d Cir. 1990)).

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). <u>See Wainwright v. Sykes</u>, 433 U.S. 72, 87-91 (1977); <u>see</u> <u>also</u> <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992).


**C.   The Adequate and Independent State Ground Doctrine**

The Supreme Court has "made clear that the adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989) (citations omitted).

## IV.  Petitioner's Claims

## 1.  Insufficiency of the Evidence

Petitioner argues, as he did on direct appeal, that the evidence was legally insufficient[2] to support his conviction for Attempted Murder in the Second Degree.  Specifically, he asserts that the People failed to prove beyond a reasonable doubt that he intended to kill Collins when he cut her throat.  See Pet. ¶ 22, Attach., Ground One.  The Appellate Division, Fourth Department rejected this claim on a state procedural ground because Petitioner failed to properly preserve the issue for appellate review.  See Cooley, 50 A.D.3d at 1549.[3]  Consequently, the claim is procedurally defaulted from review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and

---

[2]

Petitioner also appears to challenge the weight of the evidence in the habeas petition.  See Pet. ¶ 22, Attach., Ground One; Tv. at Point II.  Such a claim, which is purely a matter of state law is not cognizable by this Court on habeas review, and is therefore dismissed on that basis.  See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review).

[3]

Alternatively, the Appellate Division, Fourth Department rejected this claim on the merits, finding that: "In any event, that contention is without merit.  The attempted murder victim testified that, without provocation, defendant entered her home and cut her throat, and the medical records of that victim established that she sustained multiple stab wounds to the neck, one of which had penetrated her airway.  We thus conclude that the evidence, viewed in the light most favorable to the People, is legally sufficient to establish that defendant intended to kill that victim and came dangerously close to doing so."  See Cooley, 50 A.D.3d at 1549 (internal citations and quotations omitted).

adequate to support the judgment.   See Coleman v. Thompson, 501 U.S. 722, 751 (1991).   Here, the state court relied on New York's preservation rule (codified at N.Y. Crim. Proc. L. ("CPL") § 470.05 [2]) to deny Petitioner's claim because it had not been properly preserved for appellate review.   See Cooley, 50 A.D.3d at 1549. The Second Circuit has determined that CPL § 470.05 [2] is an independent and adequate state procedural ground.   See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999);   Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).   The Appellate Division, Fourth Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of Petitioner's insufficiency of the evidence claim.

        This Court, however, may reach the merits of Petitioner's claim, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice.   See Coleman, 501 U.S. at 750.   Petitioner alleges ineffective assistance of trial counsel as cause for the default.   See Pet. ¶ 22, Attach. at 1.   A claim of ineffective assistance of counsel may establish cause for a procedural default.   See Edwards v. Carpenter, 529 U.S. 446, 451 (2000);   McCleskey v. Zant, 499 U.S. 467, 494 (1991);   United States v. Frady, 456 U.S. 152, 168 (1982). However, a claim of ineffective assistance of counsel may not be used, as here, to establish cause for the procedural default when

it has not been raised as an independent claim in the state courts. Murray v. Carrier, 477 U.S. 478, 488-90 (1986); see e.g., Ross v. Burge, 03 Civ. 3867, 2008 U.S. Dist. LEXIS 20141, *20-22 (S.D.N.Y. March 21, 2008) (finding Petitioner's ineffective assistance of trial counsel claim cannot serve as cause for a procedural default because it was never presented to the state court as an independent claim). Moreover, Petitioner has failed to demonstrate that this Court's failure to review the claim will result in a fundamental miscarriage of justice. Thus, the claim is dismissed as procedurally defaulted.

In any event, even if this claim was not procedurally barred, it is meritless and would not provide a basis for habeas relief. A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." Fama v. Comm'r of Corr. Services, 235 F.3d 804, 813 (2d Cir. 2000). Habeas corpus relief must be denied if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This sufficiency-of-evidence "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). Stated differently, the

reviewing court must determine "whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt . . . view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor." United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983) (internal citations omitted), cert. denied sub nom. Mont v. United States, 462 U.S. 1108 (1983).

A federal court reviewing an insufficiency-of-the-evidence claim must look to state law to determine the elements of the crime. Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (citation omitted), cert. denied, 528 U.S. 1170 (2000).  In New York, "[a] person is guilty of murder in the second degree when with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."  Penal Law § 125.25 [1].  Moreover, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."  Penal Law § 110.00.

The gravamen of Petitioner's claim is that the People failed to prove beyond a reasonable doubt that he intended to kill (rather than injure) Collins when he cut her throat.  See Pet. ¶ 22, Attach., Ground One at 1.  Despite Petitioner's contentions to the contrary, his intent to kill Collins could be easily inferred from

his actions and the severity of Collins' wounds.[4]   The evidence presented at trial established the following:  that Petitioner came up from behind Collins, grabbed her and cut her throat multiple times; that Petitioner then fled the scene of the crime, leaving Collins (and M.M.) bleeding; that, upon her arrival at the hospital, Collins was unresponsive, and air was escaping out of her neck wounds; that, upon surgical intervention, it was discovered that Collins had suffered a tracheal laceration and a laceration of the thyroid; and that Collins remained in the hospital for fourteen days and had to have a tracheal tube placed in her injured throat to assist in her breathing.  T.T. 410-414; see also Resp't App. A at 25, 27, 28, 31.

Thus, drawing all reasonable evidentiary inferences in favor of the prosecution, there was ample evidence for a rational fact-finder to conclude that the prosecution met its burden of proving Petitioner's guilt beyond a reasonable doubt on the essential elements of attempted second-degree murder.  To this

---

[4]

Petitioner also claims that the introduction of Collins's medical records at trial violated Crawford v. Washington, 541 U.S. 36 (2004).  Because Petitioner raises this claim for the first time in the habeas petition, it is unexhausted for purposes of federal habeas review.  Nonetheless, because Petitioner no longer has a state court forum within which to raise this record-based claim, the Court deems it exhausted and procedurally defaulted.  See Grey, 933 F.2d at 120; see also CPL § 440.10 [2][c] (barring review if a claim could have been raised on direct review).  Petitioner makes no showing of cause and prejudice to overcome the procedural default, nor has he demonstrated that this Court's failure to consider the claim will result in a fundamental miscarriage of justice.  Accordingly, the Court dismisses Petitioner's Crawford claim as procedurally defaulted.

extent, even if the claim was not procedurally defaulted, it would still provide no basis for habeas relief.

## 2.  **Prosecutorial Misconduct Claim**

Petitioner contends, as he did on direct appeal, that the cumulative effect of the prosecutor's improper comments during summation denied him a fair trial.  To support this claim, Petitioner argues, *inter alia*, that the prosecutor: (1) shifted the burden of proof to the defendant; (2) disparaged defense counsel; (3) improperly engaged in name-calling and commented on matters outside the evidence.  See Pet. ¶ 22, Attach., Ground Two; Tv., Point III.  The Appellate Division, Fourth Department rejected this claim on the merits, finding that, "[a]lthough we agree with defendant that the prosecutor made improper comments during summation, we conclude that Supreme Court's curative instructions were sufficient to alleviate any prejudice to defendant." Cooley, 50 A.D.3d at 1549  (internal citation omitted).  As discussed below, this claim is meritless.

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (quoting United States v. Young, 470 U.S. 1, 11 (1985)). "Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999) (quoting

Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)).  For a claim of prosecutorial misconduct to suffice to establish a claim of constitutional error, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quotation marks omitted). "There must instead, be a showing that '[petitioner] suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'"   Alexander v. Phillips, 02 Civ. 8735(SAS)(FM), 2006 U.S. Dist. LEXIS 8926, *40-41 (S.D.N.Y. Feb. 21, 2006) (quoting Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994)).  "[N]ot every trial error or infirmity which might call for the application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" Donnelly, 416 U.S. at 642 (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)).  The Court must then review such comments by a prosecutor narrowly to determine whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. at 642).

To overcome this burden, petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" Bentley, 41 F.3d at

824.  Factors considered in determining such prejudice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prosecutorial conduct."  Id.; accord United States v. Thomas, 377 F.3d 232, 245 (2d Cir. 2004); Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990).  "In addition, in determining whether a prosecutor's conduct was unconstitutional, a court 'must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's [remarks] . . . . If the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction.'"  Everett v. Fischer, No. 00 Civ. 6300, 2002 U.S. Dist. LEXIS 12075, *7 (E.D.N.Y. July 3, 2002) (quoting United States v. Young, 470 U.S. 1, 13-14 (1984) (alterations in original).

Here, the prosecutor's summation remarks fall far short of a constitutional violation.  First, Petitioner argues that the prosecutor engaged in improper burden shifting in two instances. See Pet. ¶ 22, Attach., Ground Two.[5]  The first instance occurred

---

[5]

Petitioner does not specifically cite these two instances in the habeas petition.  However, in his Traverse, he states, with respect to this claim, that "[he] relies upon Appellate counsel's brief and the habeas corpus petition . . . for his legal argument."  Tv., Point III.  In his brief on appeal, he cited the following two instances.  See Resp't App. B at 13.

at the beginning of the prosecutor's summation, wherein the prosecutor stated:

> The statements that you heard from Defense counsel are the equivalent to the statements that you heard that the Defendant gave on July 2nd. Each party was confronted with facts that cannot be denied; that cannot be overlooked and that cannot be explained away. Yet they must do something. Each of them must do something to absolve Antonio Cooley of the horror that he inflicted on the two women that day.

T.T. 512. Defense counsel objected to this statement on the basis that "[i]t is burden shifting." T.T. 512. Although the trial court did not sustain or overrule the objection, it did state as follows: "Well, the Defense has no burden of proof whatsoever. The Defense has a right to make a closing argument and the jury is to draw no inference from the Defense not calling any witnesses and they have no burden of proof. The burden of proof never shifts. Go ahead." T.T. 513. In the second instance, the prosecutor stated, "Do you remember defense counsel 'Well, [Collins] is lying because she said she only entertains in the living room.' Remember her testimony? [Collins] says 'No. My personal company would go in the bedroom.' Remember that? That is something that is not brought out by defense counsel." T.T. 525. Defense counsel objected on the basis of burden shifting, and the trial court overruled the objection, stating, "[i]t's a fair response to summation." T.T. 525. With respect to the first instance, the prosecutor's comment was arguably improper to the extent it may

-18-

have conveyed to the jury that the burden of proof did not rest
entirely with the prosecution.   In the second instance, the
prosecutor's statement was a fair comment on Collins' testimony on
cross-examination (that she entertained personal company in her
bedroom) and defense counsel's summation (in which he stated said
entertaining occurred in the living room or kitchen).   T.T. 429,
506.   In any event, in either or both instances, even if the
prosecutor's comments were improper, the trial court curative
instructions, coupled with the final jury instructions about the
burden of proof and the presumption of innocence were sufficient to
cure any improper effects of the prosecutor's comments.   T.T. 513,
563; see, e.g., Chalmers v. Mitchell, 73 F.3d 1262, 1271 (2d Cir.)
(trial court's instruction on the burden of proof, which included
language that the presumption of innocence remains with the
defendant unless the jury finds the prosecution proved its case
beyond a reasonable doubt and that the burden of proof never shifts
to the defendant, "likely corrected any misperception the jury may
have held" as a result of the prosecution's comments.), cert.
denied, 519 U.S. 834 (1996); Hardison v. Artus, 06 Civ. 0322 (LTS)
(AJP), 2006 U.S. Dist. LEXIS 29445, *51-52 (S.D.N.Y. May 16, 2006)
("The trial court's charge to the jury on the burden of proof
adequately addressed any prejudice that may have resulted from the
prosecutor's summation."); Trueluck v. Phillips, 03 Civ. 0904,
2003 U.S. Dist. LEXIS 18638, *14 (S.D.N.Y. Oct. 20, 2003) ("The

-19-

court's clear instruction that the burden on the prosecutor never shifts prevented any misunderstanding of the prosecutor's summation and rendered unnecessary any further corrective charge.").

Second, Petitioner claims that the prosecutor's comments on summation "disparaged defense counsel and his integrity." Pet. ¶ 22, Attach., Ground Two. He cites an instance wherein the prosecutor stated, in reference to M.M.'s scars which were showed to the jury at trial, that "[d]efense counsel said 'I didn't like that. I didn't like that.' Boy, that's great, he didn't like that." T.T. 528. Defense counsel objected, stating, "[t]hat is not a comment on the evidence. He is trying to disparage counsel." The court overruled the objection, stating "it's a response." T.T. 528. The prosecutor's comment here was not improper as it was indeed made in response to defense's counsel summation, in which defense counsel expressed disagreement with the People's theory of the case and admonished the jury not to let sympathy influence its decision. T.T. 483. In any event, even if the prosecutor's comment was improper, the court's final jury charge was sufficient to cure any improper effects of the prosecutor's comment.

Finally, Petitioner argues that the prosecutor engaged in improper name-calling and that such comments implicated matters not in evidence. He cites various instances wherein the prosecutor referred to Petitioner as "a big coward," "a liar," or used names/phrases that called into question Petitioner's mental state.

T.T. 524, 529, 534.  Indeed, the prosecutor's conduct in some or all of these instances was arguably outside the bounds of permissible rhetorical conduct.  Nonetheless, each of these comments drew sustained objections from the trial court that were promptly followed by curative instructions, thereby alleviating any potential prejudice resulting therefrom.  T.T. 529, 532, 534.

Furthermore, under the third prong of the analysis, Petitioner has failed to show that his conviction was uncertain absent the challenged prosecutorial conduct.  As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal."  United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981);  Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir. 1990) ("The clear evidence of guilt demonstrates that [petitioner] was not prejudiced by the prosecutor's improper remarks.").  In the instant case, the proof of Petitioner's guilt with respect to the attempted murder and assault charges was strong.  Sufficient evidence was presented at trial for a jury to conclude beyond a reasonable doubt that petitioner was guilty of attempted murder in the second degree and assault in the first degree.  Moreover, Petitioner cannot show prejudice with respect to the attempted rape charge because he was acquitted of that charge.

In sum, in light of all of the factors discussed above, the Court finds that the prosecutor's comments on summation did not cause Petitioner to suffer any actual prejudice that would have had an injurious effect or influence on the jury's verdict.

Accordingly, the Appellate Division, Fourth Department's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established federal law.  The claim is therefore dismissed in its entirety.

**3.   <u>Molineux</u> Claim**

Petitioner argues that the trial court's <u>Molineux</u> ruling, which permitted the introduction of Petitioner's statement to M.M. on a prior occasion that he was "going to come back [to the apartment] and [she] better be ready to have sex with him," violated his right to a fair trial and due process of law. <u>See</u> Pet. ¶ 22, Attach., Ground Three; Tv., Point IV.  This claim, which was not raised in Petitioner's leave application to the New York Court of Appeals, is unexhausted for purposes of federal habeas review.   <u>See</u> <u>Grey</u>, 933 F.2d at 119.   Nonetheless, as discussed below, because Petitioner no longer has a state court forum within which to raise this claim, the Court deems it exhausted but procedurally defaulted.   <u>See</u> <u>id.</u>

Petitioner raised this claim on direct appeal, and it was rejected on the merits.   <u>See</u> <u>Cooley</u>, 50 A.D.3d at 1549-50. However, Petitioner failed to pursue the claim in his application

for leave to appeal to the New York Court of Appeals, and thus failed to properly exhaust it by presenting it to the state's highest court. <u>See</u> Resp't App. F; <u>Grey</u>, 933 F.2d at 119 ("Under 28 U.S.C. § 2254(b), applicants for habeas corpus relief must 'exhaust [ ] the remedies available in the courts of the State.' In doing so, a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition.") (quoting <u>Pesina</u>, 913 F.2d at 54).

The claim, however, must be deemed exhausted because, Petitioner would face an absence of corrective process were he to return to state court in an attempt to exhaust it. State appellate review is no longer available to him; he cannot again seek leave to appeal the claim in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. <u>See, e.g.</u>, N.Y. Court Rules § 500.20. Moreover, collateral review of the claim is also barred because the issue was previously determined on the merits on direct appeal. <u>See</u> CPL § 440.10 [2][a]; <u>see also</u> CPL § 440.10 [2][c] (barring review if a claim could have been raised on direct review); <u>accord</u>, <u>Grey</u>, 933 F.2d at 120-21. The state procedural rules that give rise to the constructive exhaustion of this claim also render the claim procedurally defaulted. <u>See, e.g.</u>, <u>Ramirez v. Att'y General of N.Y.</u>, 280 F.3d 87, 94 (2d Cir. 2001) ("Even if a federal claim has

not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law.") (citing <u>Grey</u>, 933 F.2d at 120-21).

As discussed at Section "IV, 1" above, a finding of procedural default bars habeas review of Petitioner's federal claim unless he can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. See <u>Murray</u>, 477 U.S. at 492; <u>Wainwright</u>, 433 U.S. at 87-91. Petitioner makes no showing of cause and prejudice or that this Court's failure to review the claim will result in a miscarriage of justice, i.e., that he is actually innocent of the crimes for which he has been convicted. See <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002). This claim is therefore dismissed as procedurally defaulted.

In any event, even if this claim was not procedurally barred, it would still provide no basis for habeas relief. Evidentiary questions are generally matters of state law and raise no federal constitutional issue for habeas review. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). A decision to admit evidence of a defendant's uncharged crimes or other bad acts under <u>People v. Molineux</u>, 168 N.Y. 264 (1901), constitutes an evidentiary ruling based on state

law.  Sierra v. Burge, No. 06-CV-14432, 2007 U.S. Dist. LEXIS 91132, *15 (S.D.N.Y. Nov. 30, 2007) (citing Roldan v. Artuz, 78 F. Supp. 2d 260, 276-77 (S.D.N.Y. 2000) ("A habeas claim asserting a right to relief on Molineux grounds must rise to the level of a constitutional violation - because Molineux is a state law issue.") (citations omitted)).  Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error was "so extremely unfair that its admission violates fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990));  see e.g., Jones v. Conway, 442 F. Supp. 2d 113, 130 (S.D.N.Y. 2006). Petitioner "bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude."  Sierra, No. 06-CV-14432, 2007 U.S. Dist. LEXIS 91132 at *15 (quoting Copes v. Schriver, No. 97-2284, 1997 U.S. Dist. LEXIS 16349 (S.D.N.Y. Oct. 22, 1997) (citations omitted)).

Under New York law, evidence of uncharged crimes or prior bad acts is admissible to show intent.  Where intent is at issue, evidence of a previous incident between the defendant and the victim has been permitted by New York courts as probative of motive or intent.  See, e.g., People v. Smith, 12 A.D.3d 1106 (4th Dep't 2004) (evidence that defendant threatened victim with physical

violence in an incident before the charged burglary was relevant to the issue of defendant's motive for committing the crime at issue and the court properly determined that the probative value outweighed the potential for prejudice), <u>appeal denied</u>, 4 N.Y.3d 767 (2005); <u>People v. Seeley</u>, 231 A.D.2d 653, 653, 648 N.Y.S.2d 111, 112 (2d Dep't 1996) (affirming conviction where witness was allowed to testify that defendant had threatened him with a gun one week before the shooting at issue because such evidence of the uncharged crime was probative of the defendant's intent and motive to shoot into a group that included the witness), <u>appeal denied</u>, 89 N.Y.2d 929 (1996).

Here, Petitioner has not demonstrated that evidence of his prior statement to M.M. that he was "going to come back [to the apartment] and [she] better be ready to have sex with him" was improperly admitted under New York law. This evidence was admitted not to show Petitioner's criminal/violent propensities, but to show his intent to rape her. As noted by the trial court, the crime of attempted rape had a "specific mental culpability, i.e., the intent to engage in intercourse by force . . . ." Hr'g Mins. of 01/05/05 7. Thus, the trial court permitted the evidence to be introduced at trial for that limited purpose. Hr'g Mins. of 01/05/05 at 11-12; T.T. 273. On direct appeal, the Appellate Division rejected Petitioner's contention "that the court erred in admitting in evidence statements that he allegedly made to the 13-year-old

victim several months prior to his commission of the crimes herein, expressing his desire to have sexual intercourse with her.  Those statements were relevant to the issue of defendant's intent, and their probative value exceeded their potential for prejudice." Cooley, 50 A.D.3d at 1549-1550 (internal citation omitted).  The Appellate Division, Fourth Department properly determined that the prior statement to M.M. was relevant to his intent, and, thus, its decision did not violate any state evidentiary rule.

However, even assuming arguendo, that the trial court erred in admitting the evidence, the error does not warrant habeas relief. The Second Circuit has explained that the "introduction of unfairly prejudicial evidence against a defendant in a criminal trial is contrary to both state law and federal law." Dunnigan, 137 F.3d at 125 (internal citations omitted).  Nevertheless, "not all erroneous admissions of such evidence are errors of constitutional dimension." Id.  Rather, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Id. (quoting Dowling, 493 U.S. at 352 (internal quotation marks omitted)). Demonstrating that erroneous admission of unfairly prejudicial evidence amounts to a denial of due process requires that the evidence, "viewed objectively in light of the entire record," must have been "'sufficiently material to provide the basis for

conviction or to remove a reasonable doubt that would have existed on the record without it.'" Id. (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992) (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (holding that erroneously introduced evidence must be "crucial, critical, highly significant") (quotation omitted)). Here, Petitioner cannot meet this standard because he was acquitted of the attempted rape charge.

Finally, the Court notes that the Supreme Court has yet to establish clearly when the admission of prior uncharged crimes under state evidentiary laws can constitute a federal due process violation. See Parker v. Woughter, No. 09 Civ. 3843 (GEL), 2009 U.S. Dist. LEXIS 52419, *4-5 (S.D.N.Y. June 9, 2009) ("[P]etitioner cites no Supreme Court case, and the Court is aware of none, holding that the admission of evidence of uncharged crimes violates the Due Process Clause of the Fourteenth Amendment."). It follows that the trial court judge's decision to admit the evidence at issue, and the Appellate Division's subsequent affirmance thereof, cannot be said to be "contrary to" or an "unreasonable application of" clearly-established federal law. See Williams, 529 U.S. at 412-13.

Accordingly, even if Petitioner's claim was not procedurally defaulted, it would still provide no basis for habeas relief.

**V.    Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.  Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    July 6, 2011
          Rochester, New York